Kaucha v. Lynch

BIA
Poczter, IJ
A200 696 363

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand fifteen.

PRESENT:
JOSÉ A. CABRANES,
PETER W. HALL,
DEBRA ANN LIVINGSTON,
    *Circuit Judges*.

_____

YAM KUMAR KAUCHA,
        *Petitioner*,

        v.                                      13-2981
                                                NAC

LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
        *Respondent*.

_____

FOR PETITIONER:        Khagendra Gharti Chhetry, New York, NY.

FOR RESPONDENT:        Stuart F. Delery, Assistant Attorney General; Linda S. Wernery, Assistant Director; Gregory M. Kelch, Trial Attorney; Office of Immigration

Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Yam Kumar Kaucha, a native and citizen of Nepal, seeks review of a July 10, 2013, decision of the BIA affirming the September 20, 2011, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Yam Kumar Kaucha*, No. A200 696 363 (B.I.A. July 10, 2013), *aff'g* No. A200 696 363 (Immig. Ct. N.Y. City Sept. 20, 2011). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision, including the portions not explicitly discussed by the BIA. *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

For an asylum applications like Kumar Kaucha's, governed by the REAL ID Act of 2005, the agency may,

2

"[c]onsidering the totality of the circumstances," base a credibility finding on an asylum applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his statements, without regard to whether they go "to the heart of the applicant's claim," so long as they reasonably support an inference that the applicant is not credible. 8 U.S.C. § 1158(b)(1)(B)(iii); *see Xiu Xia Lin v. Mukasey,* 534 F.3d 162, 167 (2d Cir. 2008). We "defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make" such a ruling. *Xiu Xia Lin*, 534 F.3d at 167. Here, the agency's adverse credibility finding is supported by the record.

Kumar Kaucha claimed that he had been persecuted and feared future persecution in Nepal by the Maoists because he was a member of the Rastriya Prajatantra Party ("RPP"). In support of his application, Kumar Kaucha submitted what he claimed was his RPP membership card. The card is written in English on one side, and along the top states the RPP slogan, "Nationality Democracy Liberalism." However, "liberalism" is spelled incorrectly, as the word is missing the "a." Furthermore, the membership card included a

3

picture of Kumar Kaucha, and when asked how his photograph appeared on the card, Kumar Kaucha first testified that he took the photograph of himself, and gave it to an RPP member. He then testified that an RPP member took the picture of him, using an RPP camera. The IJ concluded that although the discrepancy was minor, it weighed on the already "dubious nature" of the card.

Kumar Kaucha also submitted what he alleged was an original letter from the Maoist party threatening him and attempting to extort money from him. Kumar Kaucha testified that he received the letter in 1999, and it was given to him in an envelope about a third of the size of the letter itself, which was on standard letter paper. However, the IJ noted that the letter was "in completely pristine condition" and did not appear "to have ever been folded." Neither party disputes the IJ's description of the original. The IJ reasonably concluded that the typographical error in the RPP membership card, and the condition of the threatening letter, called into question the validity of those documents, and consequently impugned Kumar Kaucha's credibility. *See Siewe v. Gonzales*, 480 F.3d 160, 168-69 (2d Cir. 2007).

Kumar Kaucha testified that in 2005, the RPP split into two parties – the original RPP and a faction called RPP Nepal.  He further testified that although he had been a member of the RPP since the early 1990s, when he returned to Nepal from Dubai in 2008, he joined RPP Nepal.  In his application, Kumar Kaucha stated that when he returned to Nepal in 2008, he worked for RPP.  When asked about this apparent discrepancy, Kumar Kaucha testified that he did not mention his membership in RPP Nepal because he was only a member for a short time, from 2008 until he left Nepal in 2009.  However, in his written statement, Kumar Kaucha claimed that the Maoists assaulted him in 1999 because he was an active member of the RPP and would not give them money.  He further claimed that the Maoists threatened him again in 2009, which is why he left Nepal for the United States.  When asked during proceedings why the Maoists were still intent on harming him ten years after the initial assault, particularly given that he had been living in Dubai for five years, Kumar Kaucha testified that it was because when he returned to Nepal in 2008, he spoke out at rallies and political functions, a precipitating factor he did not mention in his written statement.  That testimony

5

contradicted his earlier explanation regarding a brief, inconsequential membership in RPP Nepal.

The REAL ID Act allows the agency to base a credibility finding on any inconsistency, without regard to whether it goes "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Kumar Kaucha's inconsistent and implausible documentary and testimonial evidence provide substantial evidence to support the agency's adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 166, 167. Furthermore, Kumar Kaucha was confronted with the inconsistencies during proceedings, and the IJ reasonably found that he did not adequately explain them. *See Majidi v. Gonzales*, 430 F.3d 77, 80-81 (2d Cir. 2005). As a result, the totality of the circumstances supports the agency's adverse credibility determination. 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 167. Because the only evidence of a threat to Kumar Kaucha's life or freedom depended upon his credibility, the finding necessarily precludes success on Kumar Kaucha's claims for asylum, withholding of removal, and CAT relief. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7